**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LORRAINE LOPEZ,<br><br>       Plaintiff,<br><br>v.<br><br>AT&T, INC. d/b/a "AT&T",  AT&T<br>MOBILITY SERVICES LLC d/b/a "AT&T"<br>AND JOHN STANKEY,<br><br>       Defendants. | Civil Action No. 3:26-cv-03561 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN STANKEY'S**</u>
<u>**MOTION TO DISMISS COMPLAINT**</u>

**Motion Day: August 3, 2026**

Defendant John Stankey respectfully submits this memorandum in support of his Motion to Dismiss the First Amended Complaint ("Complaint") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

Ms. Lopez names Mr. Stankey, AT&T's Chairman and CEO, as a defendant. Yet she does not allege that he had any connection to her or her termination, or any meaningful contacts with New Jersey.[1] Her claims against him should be dismissed for two independent reasons.

First, this Court lacks personal jurisdiction over Mr. Stankey. Last year, another court in this District addressed a nearly identical motion in *Minguez v. AT&T Corp.*, *et al.*, where Judge Kirsch concluded that subjecting Mr. Stankey to personal jurisdiction under almost identical circumstances would be improper.[2] Ms. Lopez's Complaint gives this Court no reason to deviate from Judge Kirsch's reasoned conclusion. Mr. Stankey is domiciled in Texas, where AT&T is headquartered. Ms. Lopez does not allege that Mr. Stankey has any connection to New Jersey beyond two visits in his corporate capacity, or any connection to her employment or termination. Most of her allegations instead concern an unrelated virtual town hall Mr. Stankey delivered from Texas to employees across the country that did not target New Jersey or its employees, along with

---

[1] The named Defendants are AT&T Inc. and AT&T Mobility Services, LLC. Although the term "AT&T" is used in this Motion to refer to the AT&T Defendants collectively, only Ms. Lopez's employer may be liable for her termination, and Mr. Stankey does not suggest otherwise or waive any rights by grouping them for purposes of this Motion. *See Jelks v. Newark Cmty. Healthcare Ctr.*, Case No. 13-886, 2013 WL 3821559, at *4 (D. N.J. July 23, 2013).

[2] *See* Exhibit A.

assorted postings and announcements unconnected to New Jersey or to her. These "contacts" are insufficient as a matter of law to confer personal jurisdiction.

Second, Ms. Lopez sues Mr. Stankey as an "aider and abettor" under the New Jersey Law Against Discrimination ("NJLAD"). But she failed to plausibly allege facts showing that Mr. Stankey aided and abetted any violation of the law or had any involvement in her employment or termination.

For each of these reasons, Ms. Lopez's Complaint as to Mr. Stankey should be dismissed.

## II.   FACTUAL BACKGROUND

### A.   AT&T relocated Ms. Lopez's position, and she declined to move.

The Complaint alleges that before her employment ended on July 9, 2024, Ms. Lopez worked for AT&T as Director, Sourcing Operations. (Compl. ¶ 44.) As of July 9, 2024, Ms. Lopez was 58 years old. (Compl. ¶ 2.)

On April 12, 2024, AT&T sent Ms. Lopez an "Employee Designation & Location Letter" stating that, with the How & Where We Work announcement, AT&T was consolidating national operations into nine core locations and assigning employees to offices based on their roles. (Compl. ¶¶ 74-75.) Ms. Lopez alleges that AT&T moved her role from Bedminster, New Jersey to Atlanta, Georgia, required her to accept or decline the relocation by May 13, 2024, and did not offer relocation reimbursement. (Compl. ¶¶ 77-79.) Ms. Lopez declined the relocation. (Compl. ¶ 95.) On June 25, 2024, AT&T notified Ms. Lopez that she had been selected for surplus status and that her employment would terminate effective July 9, 2024. (Compl. ¶¶ 100-101.)

Ms. Lopez attributes the alleged relocation and termination decisions to AT&T and to managers in her chain of command, including AVP Emily Chin. (*See*, *e.g.*, Compl. ¶¶ 63-72, 74-106.)

2

**B.      In his CEO capacity, Mr. Stankey spoke at AT&T events and issued announcements unrelated to Ms. Lopez or her termination.**

Ms. Lopez's allegations concerning Mr. Stankey fall into several categories.

*First*, Ms. Lopez alleges statements from Mr. Stankey regarding the How and Where We Work Initiative. She alleges that in May 2023, Mr. Stankey discussed the How and Where We Work initiative and stated that some employees "may decide, given the station of life they are in, that they want to move in another direction." (Compl. ¶ 51.) Ms. Lopez further alleges that on July 26, 2023, she attended a companywide interactive webcast while working in Bedminster, New Jersey and heard Mr. Stankey make remarks about AT&T's workforce profile, age demographics, and "younger people working at this company." (Compl. ¶¶ 52-56.) Ms. Lopez fails to specify that these alleged comments were not made in New Jersey but were instead made on webcasts from AT&T's headquarters in Dallas, Texas.

*Second*, Ms. Lopez alleges that Mr. Stankey visited AT&T offices in New Jersey in September 2023 and June 2024 in his CEO capacity. Ms. Lopez alleges that she attended a September 18, 2023 Open-Mic event in Middletown, New Jersey at which Mr. Stankey made comments including, "I'm an old guy," and "[y]ou're all young" and later posted about the event on LinkedIn stating, "the young minds helping shape the future of our network . . . ." (Compl. ¶¶ 59-60.) Ms. Lopez also alleges that, on or about the week before June 24, 2024, Mr. Stankey was physically present at AT&T's offices in New Jersey and met with members of a Technology Development Program; AT&T allegedly posted that the day was an opportunity to "celebrate the work being done by the young professionals who will lead future innovations at AT&T." (Compl. ¶ 97.) Ms. Lopez does not allege that Mr. Stankey addressed Ms. Lopez, her department or her employment in any way.

*Third*, Ms. Lopez relies on a random assortment of allegations, including that Mr. Stankey stated in a July 28, 2023, announcement regarding Angela Santone's resignation, that she had a "passion for mentoring young people," posted on LinkedIn in the summer of 2023 that "[y]oung professionals today are more likely to move around to a variety of jobs, working on a variety of projects in a variety of places," expressed at a conference in February 2024 that "he did not value seniority", and was "involved" in and benefited from the form release presented to Ms. Lopez after her surplus notification. (*See* Compl. ¶¶ 28, 57, 58, 65.)

The Complaint does not allege that Mr. Stankey made any statement to Ms. Lopez about her employment, directed Ms. Lopez's managers to relocate or terminate her, participated in any employment meeting with Ms. Lopez, or knew about the specific relocation or surplus decision before it occurred. Mr. Stankey's visits to New Jersey were not related to Ms. Lopez's job, work location, employment status, termination, or any other aspect of her employment. (Declaration of John Stankey ("Stankey Decl."), ¶ 6.)[3] At the time of his visits to New Jersey, Mr. Stankey had no personal knowledge of whether Ms. Lopez attended the events. (*Id.* ¶ 7.) Mr. Stankey was not Ms. Lopez's supervisor and was not involved in any decision regarding the assignment of her position to Atlanta, Georgia, or any other location, any requirement that she relocate, her selection for surplus, or the termination of her employment. (*Id.* ¶¶ 10-12.) Mr. Stankey does not recall ever speaking with Ms. Lopez and never traveled to New Jersey to address issues concerning her job, work location, employment status, termination, or any other matter relating to her employment. (*Id.* ¶ 13.) Mr. Stankey did not communicate with anyone in Ms. Lopez's supervisory chain of command, including Ms. Chin, JR Wilson, Cheryl Choy, Chris Sambar, Jeff McElfresh, or any

---

[3] *See* Exhibit B.

other individual regarding the assignment of Ms. Lopez's role, any relocation requirement, her surplus selection, or the termination of her employment. (*Id.* ¶ 14.) Mr. Stankey was not involved in the preparation or presentation of any General Release to Ms. Lopez and was not involved in any decision concerning reimbursement or other support for her relocation expenses. (*Id.* ¶¶ 15-16.)

### C.      Procedural posture and claims against Mr. Stankey.

On April 2, 2026, Ms. Lopez sued AT&T under the Age Discrimination in Employment Act and the NJLAD for purported age-based discrimination, retaliation, and hostile work environment, and sued Mr. Stankey under the NJLAD for aiding and abetting.

On June 15, 2026, Mr. Stankey filed a pre-motion letter with the Court seeking permission to file a motion to dismiss the claim. With the Court's permission, Mr. Stankey now moves to dismiss the claim against him under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## III.    LEGAL STANDARD

"[T]he plaintiff bears the burden of proving that personal jurisdiction is proper." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). To do so, a plaintiff must demonstrate that the court has either general or specific jurisdiction over each defendant named in the complaint. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction over an individual is typically limited to his state of domicile. *See Ford Motor Co.*, 592 U.S. at 358-59. To establish specific jurisdiction, a plaintiff must show that (1) a defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of

conducting business in that state, and (2) the alleged injury arises out of a defendant's forum-related activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Alternatively, where an intentional tort is at issue, the plaintiff must show that the forum was the "'focus' of the defendant's tortious conduct" and that the defendant "expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (internal citation omitted).

The plaintiff also bears the burden to articulate a viable claim against each defendant. Under Rule 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action" or "a naked assertion" without supporting facts is inadequate. *Twombly*, 550 U.S. at 555, 557. Rather, the plaintiff bears the burden of pleading fact sufficient "to raise a right to relief above the speculative level," *id.* at 555, and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. While the Court should assume the truth of well-pleaded factual allegations, "unsupported conclusions and unwarranted inferences" and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Karipidis v. ACE Gaming LLC*, Case No. 09-3321, 2010 WL 2521209, at *2 (D. N.J. June 9, 2010) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D. N.J. 2006)); *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

This case cannot proceed against Mr. Stankey because the Court does not have personal jurisdiction over him. The Complaint fails to connect Mr. Stankey's alleged corporate contacts with New Jersey to Ms. Lopez's relocation, surplus selection, or termination. Ms. Lopez fails to

plead facts connecting Mr. Stankey to Ms. Lopez's claims, much less pleading facts to establish the strong relationship required for specific jurisdiction. But even if the Court could exercise jurisdiction over Mr. Stankey, dismissal would still be warranted because Ms. Lopez has not alleged facts to hold Mr. Stankey individually liable under the NJLAD and thus has failed to state a claim against him. For each of these reasons, the claims against Mr. Stankey must be dismissed.

**A.      The claims against Mr. Stankey must be dismissed because the Court lacks personal jurisdiction over him.**

Ms. Lopez's claims against Mr. Stankey must be dismissed because he is not subject to either general or specific jurisdiction in this Court.

**1.      Mr. Stankey is not subject to general jurisdiction.**

Mr. Stankey is not subject to general jurisdiction. For individual defendants, general jurisdiction "is based either on their domicile or presence within a jurisdiction when they are served." *Smith v. Bishop*, Case No. 20-12526, 2021 WL 1820487, at *2 (D. N.J. May 6, 2021); *see also Ford Motor Co.*, 592 U.S. at 358–59 ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile."). Mr. Stankey's domicile is in Texas, as is his principal work location. (Stankey Decl. ¶ 3.) He has never been domiciled in New Jersey. (Stankey Decl. ¶ 4.) Nor was Mr. Stankey served in New Jersey. Ms. Lopez has thus failed to establish that the Court has general jurisdiction over Mr. Stankey. *See Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) ("General jurisdiction does not exist because [defendant] was not domiciled or present in Pennsylvania at the time of service, and he has not consented to suit there.").

**2.      Mr. Stankey is not subject to specific jurisdiction.**

Ms. Lopez also fails to meet her burden to establish specific jurisdiction over Mr. Stankey. The Supreme Court has directed that the "inquiry whether a forum State may assert specific

jurisdiction over a nonresident defendant focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). It is "the defendant's conduct that must form the necessary connection with the forum State." *Walden*, 571 U.S. at 285. That means that "[p]ersonal jurisdiction does not exist over a corporate officer simply because the corporate entity itself may be amenable to personal jurisdiction in the forum state." *N.V.E. Inc. v. Cosmetic Indus. & Trade Corp.*, Case No. 09-3412, 2010 WL 1381482, at *4 (D. N.J. Apr. 5, 2010), *report and recommendation adopted*, Case No. 09-3412, 2010 WL 1849328 (D. N.J. May 4, 2010) (quoting *Norben Import Corp. v. Metro. Plant & Flower Corp.*, Case No. 05-54, 2005 WL 1677479, at *6 (D. N.J. July 15, 2005)). Nor does jurisdiction exist simply because the defendant engaged in conduct that "could cause foreseeable harm in a given state" or because the plaintiff "felt the brunt of the harm" in the forum. *Marten v. Godwin*, 499 F.3d 290, 297-98 (3d Cir. 2007).

Instead, a plaintiff seeking to establish personal jurisdiction under the traditional test must show (1) "purposeful availment"—i.e., the defendant had "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state"—and (2) the defendant's contacts with the forum state "g[a]ve rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). To satisfy the "minimum contacts" requirement, the plaintiff must show that the defendant engaged in "activities 'purposefully directed'" to the forum state. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009)). Regardless of how substantial a defendant's contacts are with the forum state, the plaintiff must then prove that there is a "strong relationship" between the defendant's contacts with the forum and the plaintiff's claims. *Hepp*, 14 F.4th at 208. Where no such connection exists, "specific jurisdiction is lacking

8

regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S. at 264; *Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1195, 1214 (D. N.J. 1993) (no personal jurisdiction where defendant's contacts with the state "are not related to the cause of action in [the] case").

Where a plaintiff alleges an intentional tort, courts at times apply a variation on this test. Under the "effects test," it remains "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or the 'unilateral activity' of a plaintiff." *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). But in such cases, the plaintiff can establish jurisdiction only by proving that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point[ing] to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 266; *Hasson*, 114 F.4th at 187. In all circumstances, a plaintiff still must show that the exercise of jurisdiction otherwise "comport[s] with 'traditional notions of fair play and substantial justice.'" *Isaacs v. Ariz. Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015) (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)).

Ms. Lopez does not allege that Mr. Stankey personally made the relocation decision, selected Ms. Lopez for surplus, terminated Ms. Lopez, supervised Ms. Lopez, or directed Ms. Lopez's managers to take any employment action against her. Instead, Ms. Lopez makes several general allegations relating to Mr. Stankey's role as CEO and his public corporate statements. Those allegations, even accepting at this stage Ms. Lopez's pleadings regarding Mr. Stankey's statements, do not establish personal jurisdiction under the law in this circuit.

9

> a.    **The traditional minimum-contacts test does not permit personal jurisdiction over Mr. Stankey.**
>
> (1)    **None of Mr. Stankey's alleged actions creates minimum contacts with New Jersey.**

**Companywide webcasts and corporate communications.** Ms. Lopez's allegations about companywide webcasts and corporate communications do not establish minimum contacts with New Jersey. Ms. Lopez alleges that, while working in Bedminster, New Jersey, she signed into a July 26, 2023 Town Hall at which Mr. Stankey allegedly made comments about AT&T's workforce profile and the need for younger employees. (Compl. ¶¶ 52-56.) Ms. Lopez also alleges that Mr. Stankey made or posted other corporate statements about young workers. (Compl. ¶¶ 57-60.) None of those allegations establishes that Mr. Stankey personally purposefully directed conduct at New Jersey. Mr. Stankey spoke at the webcast from AT&T's Texas headquarters, and his comments were distributed electronically to employees nationwide. (Stankey Decl. ¶¶ 5-6.) The meeting was not specifically targeted to New Jersey or New Jersey employees. *Id*. The same is true for Mr. Stankey's announcements and postings: they were in no way directed at New Jersey or Ms. Lopez, nor does the Complaint allege that they were. (Compl. ¶¶ 52-56.)

Courts repeatedly have held that broadcasts cannot establish minimum contacts in the states where they are viewed. Indeed, Judge Kirsch explicitly rejected the argument that Mr. Stankey's appearance on the very same webcast created minimum contacts with New Jersey in the *Minguez* case decided just last year. (*See* Exhibit A at pp. 8-9 (citing *Fatouros v. Lambrakis*, 627 F. App'x 84, 87-88 (3d Cir. 2015)). If the law were otherwise, "such conduct would make a defendant amenable to suit wherever" the video could be watched, which "would substantially undermine the law of personal jurisdiction." *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 156 (D. N.J. 1990). Even direct videoconferences with a plaintiff in the forum are insufficient to give rise

to specific jurisdiction, and those are far more direct contacts than a general corporate broadcast. *See, e.g.*, *Prolific, LLC v. Freedom Cent. Holdings, Inc.*, Case No. 1:21-cv-02725, 2022 WL 2356076, at *3 (S.D. Ind. Feb. 25, 2022), *report and recommendation adopted*, Case No. 1:21-cv-02725, 2022 WL 2763234 (S.D. Ind. July 14, 2022).

In addition to Judge Kirsch in *Minguez*, another Judge of this Court recently rejected personal jurisdiction over an officer of the plaintiff's employer in circumstances that, while analogous in certain ways, reflect much greater contact between the officer and the forum with respect to the termination. *See Higgins v. Newsmax Broad. LLC*, Case No. 2:23-cv-03628, 2024 WL 3064844 (D. N.J. Jun. 20, 2024). In *Higgins*, the plaintiff was employed in the New York office of Newsmax and sought to work for an extended period from New Jersey due to a claimed disability. *Id.* at *2. Her employer, through one of the individual defendants, refused to permit this; when plaintiff refused to report in person, she was terminated. *Id*. She sued under the NJLAD, claiming that Newsmax and the individual defendants discriminated against her based on her disability. *Id.* at *3. On motion from the individual defendants, the Court dismissed the claims against them for lack of personal jurisdiction. *Id.* at *8. In *Higgins*, the plaintiff was assigned to an office in another state, but, before the employer required her to work in-person, her employer permitted her to work partially from home in New Jersey, as Ms. Lopez alleges occurred here. *Id.* at *8. This Court held that such "convenience-based remote work arrangements [are] insufficient to show specific personal jurisdiction over the employers who permitted them," much less over individual officers. *Higgins*, 2024 WL 3064844, at *8 (gathering cases). As the Court noted in *Higgins*—and as fully applies here—the individual defendants "have never resided in New Jersey, have never owned any property in New Jersey, have never worked in New Jersey, have never met [p]laintiff in person in New Jersey (with regard to her employment . . . or otherwise), and were

11

never physically present within New Jersey during any telephone or email communication with [p]laintiff." *Id.*

Mr. Stankey's personal jurisdiction argument is stronger than the individual defendants' argument in *Higgins* as to Ms. Lopez's relocation and termination. In *Higgins*, the individual defendants allegedly were directly involved in the work-location decision challenged by the plaintiff. *Id.* at *2. Here, Ms. Lopez does not allege that Mr. Stankey made the decision to move Ms. Lopez's role from Bedminster to Atlanta, required Ms. Lopez to accept or decline relocation, selected Ms. Lopez for surplus, or terminated her employment. Merely giving corporate remarks and issuing announcements and postings to a national audience that included employees in New Jersey does not create personal jurisdiction over Mr. Stankey.

**Mr. Stankey's New Jersey corporate visits.** Ms. Lopez's additional allegations that Mr. Stankey appeared at AT&T offices in New Jersey in September 2023 and June 2024 do not establish minimum contacts sufficient to hale him into court in his individual capacity. Ms. Lopez alleges that Mr. Stankey spoke at an Open-Mic event in Middletown, New Jersey in September 2023 and visited AT&T's New Jersey offices in June 2024 to meet with Technology Development Program members. (Compl. ¶¶ 59-60, 97.) But the Complaint alleges that both visits occurred in his corporate capacity as AT&T's CEO and at AT&T workplaces, not in any individual capacity. (*See id.*)

As Judge Kirsch concluded in *Minguez*[4], Mr. Stankey's visits to New Jersey AT&T offices in his official capacity do not establish minimum contacts under the Third Circuit's fiduciary shield doctrine. *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 850-

---

4 *See* Exhibit A at p. 7.

51 (3d Cir. 2003). Under this doctrine, "a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Les Giblin LLC v. La Marque*, Case No. 2:20-cv-13827, 2021 WL 1997376, at *4 (D. N.J. May 19, 2021) (quoting *Nicholas v. Saul Stone & Co., LLC*, Case No. 97-860, 1998 WL 34111036, at *10 (D. N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000)). In *Les Giblin*, the court explained that, even if the individual defendant had attended "conferences, meetings, presentations, or speaking engagements in New Jersey," those actions would have been done "in his position at [his employer]" and thus "the contacts related thereto cannot be used to 'ensnare' [the individual defendant] in a 'jurisdictional web.'" *Id.* (quoting *MoneyGram*, 65 F. App'x at 850).

Evaluating contacts that were more direct and substantial than those alleged of Mr. Stankey, the Third Circuit has held that an out-of-state corporate officer's visit to New Jersey for work could not qualify as "minimum contacts" because the trip was made in the officer's corporate capacity. *See MoneyGram*, 65 F. App'x at 850-51. *MoneyGram* involved a contract dispute between two companies where MoneyGram inadvertently deposited duplicate payments into Consorcio's New Jersey bank account and claimed that Consorcio, with the assistance of two of its corporate officers, wrongfully concealed and converted the extra funds. *Id.* at 847. MoneyGram sued Consorcio and the two corporate officers in the District of New Jersey, and the corporate officials challenged the court's exercise of jurisdiction over them. *Id.* at 845, 848-49.

Like Mr. Stankey, the Consorcio officers had no contacts with New Jersey outside of their roles as corporate officers. *Id.* at 850. Neither owned property in, resided in, paid taxes in, employed officers or agents in, solicited business from, or traveled to New Jersey during the timeframe relevant to the dispute, except in their corporate capacity. *Id.* Both officers, however,

13

had been to New Jersey in connection with their jobs, and even in connection with the bank accounts at issue in the litigation. *Id.* Yet, because the defendants made such visits as officers of the company, rather than as individuals, the Court held it did not have personal jurisdiction over them, reasoning that treating their visits as actions attributable to the individuals would "both ignore[] and obfuscate[] [the company's] separate legal identity." *Id.*

Mr. Stankey's contact with New Jersey similarly "falls woefully short of establishing the nexus necessary to extend that jurisdiction" over him. *Id.* at 850. The Complaint does not allege that he spoke in New Jersey in any capacity other than as AT&T's CEO. Nor does the Complaint allege that any statement he made as CEO of AT&T would be relevant to an AT&T employee (even one still employed when the statement was made) other than to the extent it reflected the intent or actions of AT&T itself. Accordingly, it would "ignore[] and obfuscate[]" AT&T's "separate legal identity" to treat Mr. Stankey's corporate actions as subjecting himself to personal jurisdiction. *Id.*

Finally, even if Mr. Stankey's actions taken in his capacity as AT&T's CEO could be considered under the minimum-contacts analysis, his two visits to New Jersey would fail to establish minimum contacts for the additional reason that it was merely "isolated" and "fortuitous." *Ford Motor Co.*, 592 U.S. at 359. Mr. Stankey is not alleged to have made regular visits to New Jersey, or to have done so in any way relevant to Ms. Lopez's termination. That Mr. Stankey happened to deliver a talk during a visit to New Jersey cannot fairly be characterized as Mr. Stankey himself "purposefully direct[ing]" his own activities there. *Shuker*, 885 F.3d at 780.

**General Release.** The Complaint's assertion that Mr. Stankey was "involved" in the General Release cannot refute Mr. Stankey's uncontroverted statement he "was not involved in the preparation or presentation of any General Release to Ms. Lopez." (Stankey Decl. ¶ 15.) *See*

14

*Zelma v. Burke*, Case No. 2:16-2559, 2017 WL 58581, at \*3 (D. N.J. Jan. 4, 2017) (granting motion to dismiss and explaining "[p]laintiffs' speculative and conclusory allegations against the . . . [d]efendants are insufficient to meet their burden to prove a prima facie case of specific jurisdiction with reasonable particularity.").

> **(2)    Mr. Stankey's alleged contacts lack the required "strong relationship" with Ms. Lopez's claims.**

Because Mr. Stankey's alleged conduct does not qualify as minimum contacts with New Jersey, that conduct cannot support jurisdiction, and the Court need not reach the second step of the personal-jurisdiction analysis. But Ms. Lopez also fails to show any connection between Mr. Stankey's alleged conduct and Ms. Lopez's NJLAD claim sufficient to satisfy the "arise out of or relate to" requirement.

This second step provides that "regardless of how substantial a defendant's contacts are with the forum state," those contacts can confer specific jurisdiction only if they are "related to the cause of action." *Database Am.*, 825 F. Supp. at 1214; *Bristol-Myers Squibb*, 582 U.S. at 264 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."). To establish the "related to" requirement, the plaintiff must allege that there is a "strong relationship" between the defendant's contacts with the forum and the plaintiff's claims. *Hepp*, 14 F.4th at 208.

The "'relate to' requirement 'incorporates real limits,'" requiring that the plaintiff offer facts regarding the defendant's "efforts to specifically direct or connect" residents of the forum state "to the alleged harm." *Hasson*, 114 F.4th at 194. While the Supreme Court has clarified that this test does not always require a causal link between the conduct in the state and the lawsuit, it does require a sufficient link that the defendant would have "clear notice" that he was engaged in the type of conduct in the forum state that would subject him to the type of claim made. *Ford*

15

*Motor Co.*, 592 U.S. at 367-68. In construing *Ford Motor Co.*, the Third Circuit has explained that it involved a circumstance where the "contacts between those [forum] states and the company were legion," and the company "systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Hepp*, 14 F.4th at 208 (quoting *Ford Motor Co.*, 592 U.S. at 365). In contrast, even targeting business to a forum state is not sufficient where the alleged wrongdoing occurred as part of different conduct. *Id.*

Ms. Lopez does not plead a "strong relationship" between Mr. Stankey's alleged New Jersey appearances or corporate remarks and the relocation and surplus decision at issue. Ms. Lopez alleges that AT&T moved her role to Atlanta on April 12, 2024, required her to respond by May 13, 2024, and sent a surplus notification on June 25, 2024. (Compl. ¶¶ 74-79, 95, 100.) The Complaint attributes employment actions to AT&T and Ms. Lopez's chain of command, not to Mr. Stankey. (*See id.* ¶¶ 63-72, 74-106.) It does not allege that Mr. Stankey instructed anyone in Ms. Lopez's supervisory chain of command or any other AT&T manager to relocate or terminate Ms. Lopez; that those managers took action because of any statement by Mr. Stankey; or that Mr. Stankey had any knowledge of Ms. Lopez's specific employment situation. Ms. Lopez does not allege that Mr. Stankey met with Ms. Lopez, discussed Ms. Lopez, addressed her relocation, or participated in the surplus notification issued the next day. In *Minguez*, Judge Kirsch explained the plaintiff must show the claims "arise out of or relate to at least one of Mr. Stankey's contacts with New Jersey."[5] Ms. Lopez has not done so. Without any pleaded link between Mr. Stankey's alleged contacts with New Jersey and the claims in this case, the "related to" requirement is not met. *See Johnson v. R. R. Donnelly Printing Co.*, Case No. 12-1230, 2013 WL 1819818, at *4

---

[5] *See* Exhibit A at p. 10.

(W.D. Pa. Apr. 9, 2013), *report and recommendation adopted*, Case No. 12-1230, 2013 WL 1831886 (W.D. Pa. Apr. 29, 2013) (dismissing for lack of personal jurisdiction where plaintiff failed to plead that any "meaningful link exists" between defendant's contacts with the forum and "the substance of [p]laintiff's claims for wrongful termination, discrimination and retaliation").

Because Mr. Stankey's companywide statements and corporate-capacity visits neither suffice to show minimum contacts with New Jersey nor have a strong relationship to Ms. Lopez's claim against him, they cannot support specific jurisdiction.

> **b.      The "effects test" also does not permit this Court to exercise jurisdiction.**

Ms. Lopez also cannot show personal jurisdiction under the "effects test," which courts at times use to determine whether personal jurisdiction exists where intentional torts occurred outside the forum state. The core showing required by the effects test is that the defendant "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Remick*, 238 F.3d at 258 (quoting *IMO Indus.*, 155 F.3d at 266). The effects test limits personal jurisdiction to an appropriate scope by "prevent[ing] a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." *Marten*, 499 F.3d at 297. As a result, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* at 298 (quoting *Keeton*, 465 U.S. at 780).

Ms. Lopez cannot meet this test. Mr. Stankey's conduct is not alleged to be tortious conduct in the first place. *See IMO Indus.*, 155 F.3d at 265-67 (effects test requires that the "defendant committed an intentional tort"). Instead, the challenged conduct is Ms. Lopez's termination, with which Mr. Stankey is not alleged to have been (and was not) involved in, and a purported hostile

17

work environment, though there is not a single allegation Mr. Stankey directed any comments at Ms. Lopez. The suit therefore is not alleged to have "arise[n]" out of any conduct by Mr. Stankey, so the effects test cannot be applied to consider where the conduct from which it arose was aimed.

Moreover, Ms. Lopez does not allege that New Jersey was "the focus" of Mr. Stankey's companywide statements or that Mr. Stankey deliberately targeted New Jersey with tortious conduct. *Marten*, 499 F.3d at 298-99. The July 2023 Town Hall was allegedly open to all AT&T employees, not New Jersey employees specifically. (Compl. ¶ 52.) A broadcast available nationally is not "deliberately targeted" to any particular forum. *See Hasson*, 114 F.4th at 190 (denying jurisdiction where plaintiff did not allege defendant's "website is accessible only in" forum state, company "deploys [its product] only to users who access the site while in" the forum state, or "website tailors its content in any meaningful way" to citizens of forum state). Nor does Ms. Lopez allege facts showing that Mr. Stankey's September 2023 and June 2024 visits were directed at Ms. Lopez's relocation or termination, rather than corporate visits to AT&T workplaces. Because Mr. Stankey is not alleged to have committed an intentional tort against Ms. Lopez or to have expressly aimed suit-related tortious conduct at New Jersey, Ms. Lopez cannot establish personal jurisdiction under the effects test.

### 3.    Exercising jurisdiction would be inconsistent with due process.

The traditional test and effects test both aim to address the fact that the "Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. The Supreme Court has long recognized that due process requires that, before a defendant can be subject to the jurisdiction of a forum, he must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311

U.S. 457, 463 (1940)). Because Ms. Lopez cannot satisfy either the traditional test or the effects test, she cannot meet her burden to show that the Court has personal jurisdiction over Mr. Stankey. *Walden*, 571 U.S. at 283–88.

To the extent jurisdiction over Mr. Stankey could be construed to satisfy any aspect of either test, it would nonetheless be inconsistent with due process because Ms. Lopez has not alleged that Mr. Stankey undertook personal conduct that "create[d] a substantial connection with the forum State." *Id.* at 284. In *Minguez*, Judge Kirsch explained subjecting Mr. Stankey to personal jurisdiction would violate due process because "there [were] no allegations (i) Mr. Stankey lives in New Jersey; (ii) Mr. Stankey owns property in New Jersey; (iii) Mr. Stankey vacations in New Jersey; (iv) Mr. Stankey works out of AT&T's New Jersey office; (v) Mr. Stankey broadcasts town halls from New Jersey; (vi) Mr. Stankey visited New Jersey to partake in [plaintiff's] termination decision; or (vii) Mr. Stankey was even aware of [plaintiff's] existence before this action commenced." (Exhibit A p. 12.) Ms. Lopez's theory would mean that a corporate officer who gives nationwide corporate remarks or visits corporate offices in the ordinary course of his duties exposes himself to individual litigation in every state where the corporation has employees and where the corporation later makes employment decisions. Such a rule would offend traditional notions of fair play and substantial justice.

### B. The Court should dismiss the claims against Mr. Stankey because Ms. Lopez does not state a claim under the NJLAD.

Because the claims against Mr. Stankey must be dismissed for lack of personal jurisdiction, the Court need not reach Mr. Stankey's Rule 12(b)(6) argument. *Cf. Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442, 1442 n.2 (5th Cir. 1996). But if the Court determines it has jurisdiction, Ms. Lopez's claim against Mr. Stankey should nonetheless be dismissed because Ms. Lopez fails to plead the requisite facts to establish individual liability under the NJLAD.

The NJLAD generally prohibits unlawful discrimination by an employer. But individual liability "can only arise through the 'aiding and abetting' mechanism." *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (2008); *see* N.J.S.A. 10:5-12(e) (prohibiting anyone "to aid, abet, incite, compel or coerce" unlawful employment discrimination). Other than conclusory statements that Mr. Stankey "actively and purposefully aided and abetted AT&T's age discrimination" and "aided and abetted AT&T in discriminating against Ms. Lopez because of her age," (Compl. ¶¶ 130, 142), the Complaint does not include allegations sufficient to establish individual aiding-and-abetting liability against Mr. Stankey. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts should disregard "legal conclusion[s]," even when "couched as [] factual allegation[s]").

To state a claim for NJLAD aider-and-abettor liability, the Complaint must allege "(1) the party whom the defendant aid[ed] [] perform[ed] a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant [] knowingly and substantially assist[ed] the principal violation." *Tarr v. Ciasulli*, 853 A.2d 921, 929 (2004). Ms. Lopez does not plead facts showing that Mr. Stankey was "generally aware of his role" or that he "knowingly and substantially assist[ed]" in Ms. Lopez's relocation, surplus selection, or termination. *Id.*

To satisfy the awareness and knowing-and-substantial-assistance elements required to plead individual liability under the NJLAD, a plaintiff must allege that the defendant "actually intend[ed] to facilitate discrimination" and that he was "actively involved in the discriminatory conduct." *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 774 (D. N.J. 1998). "[M]ere inaction, passivity or acquiescence" are not enough. *Id.* The New Jersey Supreme Court has held that a plaintiff cannot survive a motion to dismiss when "[t]here was no evidence that [the individual]

20

encouraged any of the wrongful conduct against plaintiff, that he assisted the wrongdoers, or that he was even present when the wrongful conduct occurred." *Tarr*, 853 A.2d at 929.

For example, in *Horvath v. Rimtec Corp.*, this Court found that the plaintiff failed to plead individual liability against an individual defendant even though the plaintiff alleged that he "verbally complained to [the defendant] about being discriminated against on the basis of his age, and that [the defendant] did virtually nothing in response." Case No. 99-670, 2000 WL 1030357, at *5 (D. N.J. July 19, 2000). The Court held that "these allegations amount[ed] to nothing more than a supervisor's passivity or inaction," as opposed to the active involvement needed to establish individual liability under the NJLAD. *Id.* Here, unlike in *Horvath*, Ms. Lopez does not allege that Mr. Stankey participated either passively or actively in Ms. Lopez's termination, making dismissal appropriate. *See also DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D. N.J. 2015) (dismissing individual defendants where "the [c]omplaint hardly mentions the individual defendants" because "threadbare assertions do not make out even a minimally plausible claim" for aiding and abetting discrimination under NJLAD).

Instead, Ms. Lopez alleges only a handful of facts, none of which suggests that Mr. Stankey had any connection to Ms. Lopez's termination. Indeed, the Complaint does not even allege that Mr. Stankey knew about Ms. Lopez's relocation or termination. *Cf. Sussman v. Cap. One, N.A.*, Case No. 14-1945, 2014 WL 5437079, at *6 (D. N.J. Oct. 24, 2014) (no individual liability where "[p]laintiff does not even attempt to connect [defendant's] knowledge of [p]laintiff's medical condition and desire to continue working to his discrimination claims" and "his allegations certainly [did] not include statements that [defendant] performed wrongful acts that created injury, was aware of his roles in facilitating illegal activity, or knowingly or

21

substantially assisted in the principal violation"). Ms. Lopez, thus, has not stated a claim for aiding and abetting a violation of the NJLAD.

Ms. Lopez's allegations against Mr. Stankey not only fall far short of connecting him to the challenged conduct but are also conclusory. On a motion to dismiss, "unsupported conclusions and unwarranted inferences" and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Karipidis*, 2010 WL 2521209, at *2 (quoting *Baraka*, 481 F.3d at 195; *Wyeth*, 448 F. Supp. 2d at 609. Ms. Lopez alleges no facts to suggest that Mr. Stankey had any specific intent, much less with respect to New Jersey, but instead simply asserts the conclusion that "CEO Stankey aided and abetted AT&T in discriminating against Ms. Lopez because of her age. (Compl ¶ 142.) This Court recently disregarded similarly conclusory allegations in granting a motion to dismiss a plaintiff's discrimination claims where the plaintiff alleged "in a general and conclusory fashion" that his company's vaccine mandate was really "an [] excuse to replace plaintiff" on the basis of his race, sex, and sexual orientation. *Dzibela v. BlackRock Inc.*, Case No. 23-02093, 2024 WL 4349813, at **2-3, 6 (D. N.J. Sept. 30, 2024). The Court held that these kinds of allegations "constitute[d] 'naked assertion[s]' devoid of 'further factual enhancement' and legal conclusions that are insufficient to state a claim." *Id.* at *7 (internal citations omitted).

Similarly, the Western District of Pennsylvania dismissed a wrongful termination case based on the allegation that the company's vaccination policy was a pretext "to remove employees over the age of 40 and replace them with a younger workforce." *Siko v. AstraZeneca Pharms. LP*, Case No. 23-1184, 2024 WL 4479918, at *2 (W.D. Pa. Apr. 2, 2024). The plaintiff's basis for this allegation was that the employer's Head of Inclusion and Diversity had given a presentation to personnel asserting that the employer "should be hiring employees close to the age of 29-years-

old." *Id.* at *1. Yet the court held that the "allegation that [employer's] vaccination policy was an effort to realize this initiative by forcing older personnel out of its employ is a legal conclusion" that was properly "disregarded." *Id.* at **4-5. So too here; Ms. Lopez's allegation that Mr. Stankey had a secret intent to discriminate on the basis of age is entirely conclusory and thus irrelevant.

Ms. Lopez failed to plead facts to plausibly allege individual liability under the NJLAD, and her NJLAD claims must be dismissed against Mr. Stankey. *Cf. Jones,* 20 F.Supp.2d at 775 (dismissing claim of individual liability under the NJLAD where plaintiff "does not even allege[] that there is a viable link between" a defendant's actions and the plaintiff's termination and where there was "no allegation" that the defendant "even knew of the alleged discriminatory conduct.")

## V.    CONCLUSION

For these reasons, Mr. Stankey respectfully requests that the Court dismiss the Complaint against him in its entirety with prejudice because the Court lacks personal jurisdiction and Ms. Lopez has not pleaded facts establishing any basis to hale him into this Court individually. *See Stampone v. Amann*, Case No. 20-3874, 2022 WL 2752475, at *3 (D. N.J. June 24, 2022) (dismissing with prejudice where "there is no conceivable basis upon which [p]laintiff[] can amend [his] [c]omplaint to confer personal jurisdiction"); *Minguez v. AT&T et al.* (Exhibit A p. 14) (granting motion to dismiss and explaining "[plaintiff] fails to meet his burden to show that New Jersey was 'the focus of the activities of [Mr. Stankey] out of which the suit arises.'") (internal citations omitted). In the alternative, Mr. Stankey requests that the Court dismiss with prejudice Ms. Lopez's NJLAD claim against him under Rule 12(b)(6) because Ms. Lopez fails to plausibly allege facts showing that Mr. Stankey aided and abetted any violation of that law.

Dated:  July 6, 2026

Respectfully submitted

*/s/ Rachel Fendell Satinsky*

Rachel Fendell Satinsky, Bar No. 017002010
rsatinsky@littler.com
Tanner McCarron, Bar No. 326242020
tmccarron@littler.com
LITTLER MENDELSON, P.C.
Three Parkway, 1601 Cherry Street
Suite 1400
Philadelphia, Pennsylvania 19102.1321
Telephone:     267.402.3000
Facsimile:     267.402.3131

Attorneys for Defendants
AT&T INC., AT&T MOBILITY SERVICES
LLC and JOHN STANKEY

24