# EXHIBIT A

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

GARY MINGUEZ,

    Plaintiff,

       v.

AT&T CORP., *et al.*,

    Defendants.

</td><td>

Civil Action No. 24-09069 (RK) (JTQ)

**OPINION**

</td></tr>
</table>

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant John Stankey's Motion to Dismiss Plaintiff Gary Minguez's First Amended Complaint (the "Motion"). (ECF No. 37.) Mr. Minguez opposed the Motion (ECF No. 38), and Mr. Stankey replied (ECF No. 39). Having considered the parties' submissions, the Court resolves the pending Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Mr. Stankey's Motion is **GRANTED** for lack of personal jurisdiction, and the First Amended Complaint is **DISMISSED** without prejudice against him.

## I.    BACKGROUND

    This action arises out of Mr. Minguez's 2023 termination from AT&T[1] when he was 66 years old. (ECF No. 15, "FAC," ¶¶ 22, 53.) Prior to his termination, Mr. Minguez worked as a Senior Specialist, Technical Project Management at AT&T, having held other various job titles at

---

[1] Along with Mr. Stankey, Mr. Minguez has also sued AT&T Corp., AT&T Mobility Services, LLC, and AT&T Services, Inc., all of whom Mr. Minguez alleges acted as his "single, integrated, and/or joint 'employers.'" (ECF No. 15 ¶ 6.) For ease of reference, the Court refers to these three AT&T entities collectively as "AT&T" solely for purposes of deciding Mr. Stankey's Motion. Because the Motion was brought only by Mr. Stankey, AT&T's status in this litigation remains unchanged by the Court's decision herein.

the company since 2006. (*Id.* ¶¶ 23–25.) AT&T maintained "major" New Jersey offices in Middletown and Bedminster, but Mr. Minguez primarily worked out of his home office in New Jersey. (*Id.* ¶¶ 26–27.)

In both October 2022 and July 2023, Mr. Stankey, AT&T's Chief Executive Officer, held town hall meetings where he discussed the AT&T workplace initiative, "How and Where We Work." (*Id.* ¶¶ 5, 33, 51.) This initiative involved the creation of geographic "collaboration zones" which purportedly required the relocation of some AT&T employees. (*Id.* ¶¶ 37–40.) At the town halls, Mr. Stankey allegedly made several "age-biased comments." (*Id.* ¶¶ 34, 51.) Summarizing Mr. Stankey, Mr. Minguez alleges that Mr. Stankey stated that "the age of AT&T's workforce was not in line with its customer demographics," "AT&T needed to move out the 'old' to make room for the 'new,'" "AT&T did not need people who knew how to use an abacus," "age was a decision-making criteria for employment at AT&T," "AT&T did not need all these old people," and "AT&T needed young people with new ideas." (*Id.*)

On July 17, 2023, Mr. Minguez was informed by his supervisors that his position was being relocated from New Jersey to Texas. (*Id.* ¶¶ 41–42.) Mr. Minguez was "told that if he wanted a chance at remaining employed with AT&T, he would have to apply for his former position and relocate to Texas at his own expense." (*Id.* ¶ 44.) Mr. Minguez explained that his family and life were centered in New Jersey and that he would have to discuss any possible relocation with his wife. (*Id.* ¶ 46.) He also complained that he was being targeted for termination because of his age, but one of his supervisors explained that he was being selected because he was not in a "collaboration zone." (*Id.* ¶¶ 47–48.)

Mr. Minguez ultimately informed his immediate supervisor that he was unable to move to Texas, and on August 25, 2023, he was placed on "surplus status" and notified that his employment

would be terminated, effective September 8, 2023. (*Id.* ¶¶ 52–53.) Mr. Minguez alleges that his position was then filled by someone who was 46 years old. (*Id.* ¶ 56.) Postdating Mr. Minguez's termination, Mr. Stankey purportedly visited AT&T's New Jersey offices and "publicly credited the 'young minds' of AT&T's New Jersey employees as responsible for 'helping [to] shape the future'" of AT&T. (*Id.* ¶ 63.)

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission (*id.* ¶ 16), Mr. Minguez filed his initial Complaint in this Court on September 10, 2024. (ECF No. 1.) He alleged one count of age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and one count of age discrimination and retaliation under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD"). (*Id.*) On January 24, 2025, Mr. Minguez filed his First Amended Complaint ("FAC"), clarifying that Mr. Stankey was only being sued under the NJLAD as an aider-and-abettor and was not being sued under the ADEA. (*See* FAC.)

On May 2, 2025, Mr. Stankey filed the present Motion, arguing both that this Court does not have personal jurisdiction over him and that the FAC fails to allege a claim for aider-and-abettor liability under the NJLAD. ("Mot. Br.," ECF No. 37-1.) Mr. Minguez submitted an opposition brief ("Opp. Br.," ECF No. 38), and Mr. Stankey submitted a reply brief ("Reply Br.," ECF No. 39).

## II.    **LEGAL STANDARD**[2]

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for lack

---

[2] Mr. Stankey brings his Motion under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 37.) Because the Court finds it lacks personal jurisdiction over Mr. Stankey, it does not reach Mr. Stankey's arguments regarding Mr. Minguez's failure to state a claim against him. The Court only notes that it is skeptical Mr. Minguez can make out an aider-and-abettor claim under the NJLAD against Mr. Stankey as there do not appear to be any non-conclusory allegations that Mr. Stankey "encouraged any of the wrongful conduct against [Mr. Minguez], that he assisted the wrongdoers, or that he was even present" or aware of

of personal jurisdiction. Once a defendant raises a jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Such competent evidence may include sworn affidavits, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984), but may not include a mere "unverified complaint," *Markferding v. Westmoreland Cnty. (Pa.) Domestic Rels. Off.*, No. 05-755, 2005 WL 1683744, at *3 (D.N.J. June 17, 2005), or bare assertions made "upon information and belief," *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. 07-375, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Where the district court declines to hold an evidentiary hearing, "the plaintiff[s] need only establish a *prima facie* case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007)). The Court must accept all of a plaintiff's allegations as true and construe all disputed jurisdictional facts in the plaintiff's favor. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

A federal court sitting in New Jersey "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4 and *Carteret Sav. Bank*, 954 F.2d at 144). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4–4(c)). This Court therefore has personal jurisdiction over a party that has "constitutionally sufficient 'minimum contacts'" with New Jersey. *Id.* (quoting *Carteret Sav. Bank*, 954 F.2d at 149). One way to assert personal jurisdiction over a non-resident

---

Mr. Minguez's termination. *Tarr v. Ciasulli*, 181 N.J. 70, 85 (N.J. 2004).

defendant is via "specific (sometimes called case-linked) jurisdiction."[3] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). This arises when a defendant "purposefully avail[s]" itself of a forum and the plaintiff's claims arise from a defendant's contacts with the forum. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A plaintiff can establish specific personal jurisdiction either through this "traditional" test or the *Calder* "effects" test, which can provide a basis for specific jurisdiction "even when the defendant's contacts with the forum alone . . . are far too small to comport with the requirements of due process under our traditional analysis." *Marten*, 499 F.3d at 297 (internal quotation marks omitted); *see Calder v. Jones,* 465 U.S. 783 (1984).

## III.   DISCUSSION

To start, Mr. Minguez exclusively relies on the allegations in the FAC in order to meet his *prima facie* burden to show personal jurisdiction over Mr. Stankey.[4] Accepting all allegations in the FAC as true, Mr. Minguez's bare bones allegations relating to Mr. Stankey fail to make out a *prima facie* case of personal jurisdiction under either the traditional test or the effects test.[5] Indeed, despite his burden, Mr. Minguez does not cite to *a single case* in support of an exercise of specific

---

[3] The other recognized type of personal jurisdiction is "general" jurisdiction, which exists "when a defendant has maintained systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Mr. Minguez does not argue that Mr. Stankey is subject to general jurisdiction in New Jersey, and thus the Court only undertakes a specific jurisdiction analysis herein.

[4] Mr. Minguez's opposition brief includes a single passing reference to a declaration submitted by an AT&T Associate Vice President that was filed as part of Mr. Stankey's Motion. (Opp. Br. at 9; *see* ECF No. 37-4.) This declaration merely confirms an allegation made in the FAC: Mr. Stankey visited AT&T's Middletown, New Jersey office in September 2023 after Mr. Minguez's termination. (ECF No. 37-4 ¶ 3; *see* FAC ¶ 63.)

[5] "It is axiomatic that jurisdiction over individual defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in a particular forum." *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 850 (3d Cir. 2003) (cleaned up). Thus, the Court only assesses Mr. Stankey's individual contacts with New Jersey because personal jurisdiction over AT&T is not relevant to this inquiry. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

personal jurisdiction under same or similar circumstances. (*See generally* Opp. Br.)

The entirety of the FAC's allegations involving Mr. Stankey's contacts with New Jersey are: (i) Mr. Stankey made "several age-biased comments" during two town halls[6] that took place in October 2022 and July 2023 "with the intent of older workers—including those located in New Jersey—being removed from AT&T's workforce" and "creating younger workforces at its New Jersey office locations" (FAC ¶¶ 33–36, 51), and (ii) postdating Mr. Minguez's termination, "Mr. Stankey [] personally visited AT&T's New Jersey offices and, in doing so, publicly credited the 'young minds' of AT&T's New Jersey employees as responsible for 'helping [to] shape the future of" the AT&T network (*id.* ¶ 63).[7] The Court will first analyze whether specific personal jurisdiction is sufficiently alleged under the traditional test and then will analyze same under the effects test.

## A.    THE TRADITIONAL TEST

Mr. Minguez's allegations against Mr. Stankey fail under each prong of the traditional personal jurisdiction test. A plaintiff alleges specific jurisdiction under the traditional test by

---

[6] As discussed herein, the FAC does not indicate *where* the town halls took place; where Mr. Stankey conducted these town halls from; to *whom* the town halls were directed (including whether it was even directed at AT&T employees, and if AT&T employees, whether the audience was New Jersey personnel, regional personnel, nationwide personnel, or international personnel); or *what format* the town halls were delivered, whether that be in-person or virtual. (FAC ¶¶ 33, 51.)

[7] The FAC also includes a number of conclusory allegations that Mr. Stankey made his purported age-biased statements at the town halls "with the intent of older workers—including those located in New Jersey—being removed from AT&T's workforce under the guise of the 'How and Where We Work' initiative" and "with the intent of creating younger workforces at its New Jersey office locations." (FAC ¶¶ 35–36); *Goboori v. Scarola,* No. 18-14553, 2019 WL 3344760, at *2 (D.N.J. July 25, 2019) ("[T]he Court cannot find personal jurisdiction over Defendants pursuant to New Jersey's long-arm statute because the Complaint's jurisdictional allegations are so conclusory it is not clear that Defendants have sufficient minimum contacts with New Jersey such that the suit does not offend traditional notions of fair play and substantial justice."). Indeed, nowhere in Mr. Minguez's opposition brief does he point to *any* case law supporting the exercise of personal jurisdiction over a defendant under facts similar to those in the present action. *See D'Elia v. Grand Caribbean Co.,* No. 09-1707, 2011 WL 6153704, at *4 (D.N.J. Dec. 12, 2011) ("Plaintiffs' brief contains no . . . citation to legal authority to support their conclusory assertion that [defendant] has contacts with New Jersey.").

6

"establish[ing] with reasonable particularity" three elements. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). *First*, the defendant must have "'purposefully directed [his] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp.*, 471 U.S. at 472). *Second*, the litigation must "arise out of or relate to" at least one of the defendant's contacts with the forum. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). *Third*, the exercise of personal jurisdiction must "comport[] with 'fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

### 1. **"Purposefully Directed" Activities**

*First*, for Mr. Stankey to have "purposefully directed" his activities towards residents of New Jersey, Mr. Minguez must have alleged, "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This prong of the test "is designed to prevent a person from being haled into a jurisdiction 'solely as the result of random, fortuitous, or attenuated contacts.'" *Click Go & Buy Inc. v. IT Assets, Inc.*, No. 24-0744, 2024 WL 5252474, at *4 (D.N.J. Dec. 31, 2024) (quoting *Burger King*, 471 U.S. at 475). Importantly, because the alleged contacts with New Jersey were all made in Mr. Stankey's corporate capacity as the CEO of AT&T, it appears to be the case that Mr. Minguez is attempting "to ensnare [Mr. Stankey] in a jurisdictional web by reciting [AT&T's] contacts with New Jersey" which "both ignores and obfuscates [AT&T's] separate legal identity." *MoneyGram Payment Sys.*, 65 F. App'x at 850. "[T]he general rule in federal courts is that personal jurisdiction will not be exercised over an individual defendant for acts done in a corporate capacity." *Rosa v. X Corp.*, No.

7

23-22908, 2024 WL 4903619, at *8 (D.N.J. Nov. 27, 2024) (quoting 3A Fletcher Cyc. Corp. § 1296.10). While this "fiduciary shield doctrine" has been called into question in other courts, Mr. Minguez acknowledges that "the Third Circuit has not expressly overruled" it. (Opp. Br. at 13.) Thus, Mr. Minguez likely cannot rely on Mr. Stankey's contacts with New Jersey in his corporate capacity to establish personal jurisdiction over him in his individual capacity. *See Higgins v. Newsmax Broad. LLC*, No. 23-03628, 2024 WL 3064844, at *7 (D.N.J. June 20, 2024) ("Whether the cause of action asserted against the individual is for breach of contract or for tortious actions, if the individual was functioning in the role of corporate officer or agent, he cannot become subject to the court's jurisdiction on the basis of those activities." (quoting *Parliament Import Co. v. Gibson Wine Co.*, 537 F. Supp. 75, 76 (E.D. Pa. 1982))).

Further, with respect to Mr. Stankey's town hall appearances, there are no allegations that these town halls took place in New Jersey or were directed towards New Jersey. (*See* FAC.) While Mr. Minguez asserts in his opposition brief that these town halls were addressed to AT&T employees, "including those located in New Jersey," (Opp. Br. at 11), this allegation connecting the town halls to New Jersey is not included in the FAC. (*See* FAC ¶ 51); *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Regardless, in a declaration filed by Mr. Stankey as part of his Motion, he attests that he spoke at the town halls "from AT&T headquarters in Dallas, Texas," and the two town halls were "broadcast to AT&T employees nationwide" and "not specifically targeted to New Jersey or New Jersey employees."[8] (ECF No. 37-3 ¶¶ 5–6.) However, "a nationwide broadcast that can be viewed

---

[8] In his opposition brief, Mr. Minguez does not contest Mr. Stankey's assertions, nor does he offer "actual proofs" contradicting Mr. Stankey's assertions. *Am. Guarantee & Liab. Ins. Co. v. GetFPV LLC*, No. 24-

in the forum state is not sufficient to establish personal jurisdiction." *Corp. Trade, Inc. v. Golf Channel*, No. 12-2421, 2012 WL 13034166, at *3 (D.N.J. Oct. 11, 2012). Indeed, the FAC does not even allege the town halls could be *viewed* in New Jersey. Even if they could be, the Third Circuit has held that other kinds of broadcasts that could be viewed by persons in New Jersey could not form the basis for the exercise of personal jurisdiction in New Jersey. *See Fatouros v. Lambrakis*, 627 F. App'x 84, 87–88 (3d Cir. 2015) ("A radio broadcast in another state and a television broadcast in another country, both of which could be accessed over the Internet, and postings in Internet forums that could be read by individuals in New Jersey are insufficient bases for personal jurisdiction in this case.").[9]

With respect to Mr. Stankey's singular visit to New Jersey *after* Mr. Minguez's termination, it is true that "a single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96; *see Smal & Partners UK Ltd. v. Podhurst Orseck P.A.*, No. 11-5260, 2012 WL 1108560, at *4 (D.N.J. Mar. 2, 2012) ("A single act, however, can support jurisdiction if that contact creates a substantial connection with the forum and is connected with the injury sued upon."), *report and recommendation adopted*, No. 11-05260, 2012 WL 1107727 (D.N.J. Apr. 2, 2012). However, Mr. Stankey's visit is far too attenuated to form a "substantial connection" with

---

8922, 2025 WL 1097498, at *2 (D.N.J. Apr. 14, 2025) ("[W]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" (quoting *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015)). The FAC also does not contain allegations contradicting those made in Mr. Stankey's declaration; indeed, the language in the FAC appears to be purposefully evasive of jurisdictional detail.

[9] Mr. Minguez argues that Mr. Stankey's contacts with New Jersey "were far more direct" than those in *Fatouros* as "he initiated multiple town halls to promote his 'How and Where We Work' plan, directly addressed AT&T employees like Mr. Minguez via those town halls, personally visited AT&T's New Jersey core location, and executed his age-discriminatory strategic plan within New Jersey, resulting in Mr. Minguez's termination." (Opp. Br. at 10.) Tellingly, this argument—much like the allegations in the FAC—ignores the town halls' lack of direct ties to New Jersey.

New Jersey. *See Langsam-Borenstein P'ship by Langsam v. NOC Enters., Inc.*, 137 F.R.D. 217, 220 (E.D. Pa. 1990) ("One visit to this forum by [third-party defendant] and an unspecified number of telephone calls and fax transmissions are not enough to comport with due process."). It is not alleged that Mr. Stankey visited New Jersey to participate in the decision to terminate Mr. Minguez; indeed, the FAC acknowledges that Mr. Minguez's refusal to relocate and subsequent termination occurred prior to Mr. Stankey's visit to New Jersey. (FAC ¶ 63.) Hence, there is little basis to argue that this visit "create[d] a substantial connection with [New Jersey] and [was] connected with the injury sued upon[.]"*Choi v. Damul Corp.*, No. 12-2440, 2014 WL 314669, at *4 (D.N.J. Jan. 27, 2014). In sum, Mr. Minguez fails to meet his burden to allege that Mr. Stankey purposefully directed his activities at New Jersey. *O'Connor*, 496 F.3d at 317.

### 2. "Arise out of or Relate to" Contacts

*Second*, even assuming *arguendo* that Mr. Minguez successfully alleged that Mr. Stankey purposefully directed his activities towards New Jersey, Mr. Minguez fails to meet his burden as to the second prong: showing that his claims "arise out of or relate to" Mr. Stankey's contacts with New Jersey. This "causal connection can be somewhat looser than the tort concept of proximate causation . . . but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* at 323 ("[S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test."). Mr. Minguez argues that his claims "plainly and obviously arise out of Mr. Stankey's 'How and Where We Work' strategic plan as enforced against New Jersey employees." (Opp. Br. at 13.) However, this argument misapprehends the relatedness test. Mr. Minguez's claims must "arise out of or relate to at least one of" Mr. Stankey's *contacts* with New Jersey. *O'Connor*, 496 F.3d at 317. It is not the case that personal jurisdiction can be exercised over Mr. Stankey under the traditional test solely

10

because the *effects* of his purported town hall appearances were felt by employees in New Jersey; this is more properly considered under the *Calder* effects test discussed *infra*. *See In re Fasteners Antitrust Litig.*, No. 08-1912, 2011 WL 3563989, at *12 (E.D. Pa. Aug. 12, 2011) ("Where the plaintiff's claim is based on intentional torts that have an effect in the forum, the minimum contacts requirement may be satisfied under the 'effects test.'").

To the extent Mr. Minguez relies on Mr. Stankey's sole visit to New Jersey, "a single contact can satisfy the relatedness requirement 'if that very communication gave rise to the cause of action.'" *Vectra Visual, Inc. v. Hoving*, No. 21-03296, 2021 WL 4520339, at *7 (D.N.J. Oct. 4, 2021) (quoting *Carrabba v. Morgat*, No. 12-6342, 2014 WL 229280, at *5 (D.N.J. Jan. 17, 2014)); *Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1195, 1214 (D.N.J. 1993) ("[R]egardless of how substantial a defendant's contacts are with the forum state, those contacts cannot confer specific personal jurisdiction if they are not related to the cause of action."). Here, Mr. Stankey's visit came *after* Mr. Minguez was already terminated, and there are no allegations in the FAC to support that Mr. Stankey was involved in Mr. Minguez's termination beyond vague and conclusory allegations that AT&T's "How and Where We Work" initiative was actually a ruse to commit age discrimination in New Jersey. (*See, e.g.*, FAC ¶¶ 35, 40.) Because the facts alleged "fall short of supporting a finding of relatedness" for the reasons discussed above, Mr. Minguez has failed to meet his burden to show a proper connection between his claims and Mr. Stankey's contacts with New Jersey. *Vectra Visual*, 2021 WL 4520339, at *7.

### 3. **"Fair Play and Substantial Justice"**

Given that the first two elements of the traditional test are unmet, the Court "need not examine whether an exercise of jurisdiction would com[p]ort with traditional notions of fair play and substantial justice." *Double-Take, Inc. v. Neverfail Grp. Ltd.*, No. 07-1958, 2008 WL

11510562, at *4 n.6 (D.N.J. Mar. 17, 2008). However, the Court reiterates what is *not* alleged in the FAC: there are no allegations (i) Mr. Stankey lives in New Jersey; (ii) Mr. Stankey owns property in New Jersey; (iii) Mr. Stankey vacations in New Jersey; (iv) Mr. Stankey works out of AT&T's New Jersey office; (v) Mr. Stankey broadcasts town halls from New Jersey; (vi) Mr. Stankey visited New Jersey to partake in Mr. Minguez's termination decision; or (vii) Mr. Stankey was even aware of Mr. Minguez's existence before this action commenced.[10] While it is "rare" to find an exercise of jurisdiction does not comport with notions of fair play and substantial justice where the other elements of the traditional test are met, it is clear that by failing to meet the first two elements of the test, an exercise of jurisdiction requires more than what Mr. Minguez has alleged here. Thus, he has failed to meet his burden to show that an exercise of personal jurisdiction over Mr. Stankey would be proper under the traditional test.

## B.    THE EFFECTS TEST

A plaintiff may allege specific jurisdiction through the "effects test" set out in *Calder v. Jones,* 465 U.S. 783 (1984). *First,* the defendant "must have committed an intentional tort." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998). *Second,* the plaintiff "must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort." *Id. Third,* the defendant "must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.*

While the law is not entirely clear in this District, the Court will presume "[e]mployment discrimination and retaliation causes of actions are treated as intentional torts for purposes of the

---

[10] Mr. Stankey's declaration indicates that Mr. Stankey (i) does not and has never resided in New Jersey; (ii) does not own property or maintain an office in New Jersey; and (iii) was not involved in the decision to terminate Mr. Minguez. (ECF No. 37-3 ¶¶ 4–11.) Mr. Minguez has not supplied any proofs to contradict these assertions. *See Am. Guarantee & Liab. Ins.*, 2025 WL 1097498, at *2.

*Calder* test." *Shanahan v. Ethan Allen Retail, Inc.*, No. 21-595, 2021 WL 4077950, at *5 (E.D. Pa. Sept. 8, 2021). Thus, the first element of the effects test is met. The Court will also assume *arguendo* that Mr. Minguez can fulfill the second element of the test, namely that Mr. Minguez felt "the brunt of the harm" in New Jersey "such that the forum can be said to be the focal point of the harm suffered by [Mr. Minguez] as a result of that tort." *IMO Indus.*, 155 F.3d at 265.

Mr. Minguez fails to meet his burden to show as to the final element of the effects test: that Mr. Stankey "expressly aimed his tortious conduct" at New Jersey "such that the forum can be said to be the focal point of the tortious activity." *Id.* at 266. "The presence of . . . knowledge, without more, is itself insufficient to satisfy *Calder*'s 'expressly aimed' requirement." *Id.* at 264 n.6. Indeed, unlike cases where an alleged tortfeasor knew where a plaintiff was located and thus knew where to target its wrongdoing, here there is no allegation Mr. Stankey was aware of Mr. Minguez or his whereabouts. *Cf. Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 504 (D.N.J. 2017) ("[C]ourts have held that the 'express aiming' requirement of the 'effects test' remains satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.").

Mr. Minguez's arguments on this point are limited to two sentences in a brief:

> Mr. Minguez has also pointed to specific actions taken by Mr. Stankey, which indicate that Mr. Stankey aimed his conduct at New Jersey. These actions include Mr. Stankey's age-biased comments via town halls, Mr. Stankey's age-biased comments directed to a New Jersey audience during his appearance in New Jersey, and the series of events leading up to Mr. Minguez's termination in New Jersey.

(Opp. Br. at 15–16.) Notwithstanding Mr. Minguez's extrapolation and expansive, self-serving surmise, he fails "to allege any specific facts showing a deliberate targeting" of New Jersey. *Marten*, 499 F.3d at 298. As discussed herein, the town halls were not alleged to have been targeting a New Jersey audience, and Mr. Stankey's singular visit to New Jersey occurred *after*

13

Mr. Minguez was terminated. What's more, there are no allegations in the FAC that Mr. Stankey was targeting New Jersey for discriminatory purposes such that New Jersey was Mr. Stankey's "focal point"; Mr. Minguez's attempt to recast Mr. Stankey's comments during his New Jersey visit—where he "credited the 'young minds' of AT&T's New Jersey employees as responsible for 'helping [to] shape the future of [AT&T's] network" (FAC ¶ 63)—as indicative of tortious, discriminatory behavior stretches the bounds of credulity. *See, e.g.*, *Ruggiero v. Eli Lilly & Co.*, No. 19-16206, 2022 WL 17082498, at *4 (D.N.J. Nov. 18, 2022) ("But even comments that improperly reference . . . age are not necessarily enough to sustain an age discrimination claim under the NJLAD if they do not rise to the level of severe or pervasive."). Mr. Minguez fails to meet his burden to show that New Jersey was "the focus of the activities of [Mr. Stankey] out of which the suit arises." *Marten*, 499 F.3d at 298 (quoting *Keeton*, 465 U.S at 780). Thus, because Mr. Minguez has failed to meet his burden to make out a *prima facie* case of personal jurisdiction over Mr. Stankey under either the traditional test or the *Calder* effects test, Mr. Stankey's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.[11]

---

[11] Mr. Minguez argues that if the Court finds the allegations in the FAC are insufficient to support personal jurisdiction over Mr. Stankey, it should order jurisdictional discovery. (Opp. Br. at 21.) Notably, "[i]n cases where the defendant is an individual, the presumption in favor of jurisdictional discovery is reduced." *Knierim v. Siemens Corp.*, No. 06-4935, 2008 WL 906244, at *12 (D.N.J. Mar. 31, 2008). Further, "[a] plaintiff may not . . . undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). Here, Mr. Minguez seeks jurisdictional discovery "related to who initiated Mr. Stankey's communications with New Jersey employees via AT&T town halls, how Mr. Stankey communicated his 'How and Where We Work' strategic plan to management in AT&T's New Jersey offices, and the extent of Mr. Stankey's control over implementation of his strategic plan in New Jersey." (Opp. Br. at 22.) Mr. Minguez is clearly seeking to engage in a fishing expedition to find a jurisdictional hook over Mr. Stankey. Because the Court finds that Mr. Minguez has not made out a *prima facie* case of personal jurisdiction over Mr. Stankey, it declines Mr. Minguez's alternative request for jurisdictional discovery. *Knierim*, 2008 WL 906244, at *12 ("[T]he Court denies plaintiffs' request for jurisdictional discovery because, based on the record before the Court, plaintiffs cannot establish a *prima facie* showing of personal jurisdiction."). The case, of course, proceeds against the AT&T corporate entities. During the course of discovery with AT&T, in the event facts develop to legally establish personal jurisdiction over Mr. Stankey, by no means does this decision foreclose Mr. Minguez from filing the appropriate motion in such instance.

14

## CONCLUSION

For the foregoing reasons, Mr. Stankey's Motion to Dismiss is **GRANTED** for lack of personal jurisdiction, and the First Amended Complaint is **DISMISSED** without prejudice against him. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: June 16, 2025

15