## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LORRAINE LOPEZ,<br><br>            Plaintiff,<br><br>v.<br><br>AT&T, INC. d/b/a "AT&T",    AT&T<br>MOBILITY SERVICES LLC d/b/a "AT&T"<br>AND JOHN STANKEY,<br><br>            Defendants. | Civil Action No. 3:26-cv-03561 |

## <u>REPLY BRIEF IN SUPPORT OF DEFENDANT JOHN STANKEY'S MOTION TO DISMISS COMPLAINT</u>

**Motion Day: August 17, 2026**

## I.    INTRODUCTION

Ms. Lopez's opposition does not cure the two defects that require dismissal of the claims against John Stankey. She still must establish personal jurisdiction over Mr. Stankey and plead facts showing that he personally aided and abetted an NJLAD violation. She does neither.

Ms. Lopez tries to distinguish *Minguez* by pointing to her declaration, her location when she watched a companywide town hall, her employment status, and her hostile-work-environment label. Those distinctions do not matter. Mr. Stankey's alleged companywide communications and corporate-capacity visits still were not suit-related conduct purposefully directed at New Jersey, and they do not show the strong relationship required between Mr. Stankey's own forum contacts and Ms. Lopez's claim.

The opposition also fails under both specific-jurisdiction tests. Ms. Lopez identifies no pleaded fact showing that Mr. Stankey directed any relevant decision or statement at her, her managers, her department, or New Jersey. Nor does she justify requiring a Texas-based corporate officer, who did not make the challenged employment decisions and has no recollection of ever speaking with Ms. Lopez, to defend an individual claim in New Jersey.

The Rule 12(b)(6) defect is independent. Ms. Lopez's aiding-and-abetting theory rests on a companywide workforce initiative and general statements to employees. The Complaint does not plead facts showing that Mr. Stankey knew about, directed, encouraged, or substantially assisted any alleged NJLAD violation against Ms. Lopez.

The Court should dismiss the Complaint against Mr. Stankey.

II.    **ARGUMENT**

  A.    **The Court lacks personal jurisdiction over Mr. Stankey.**

  1.    **The asserted distinctions from *Minguez* do not create jurisdiction.**

Ms. Lopez argues this case differs from *Minguez* for four reasons: she submitted a declaration; she watched the July 2023 town hall while in New Jersey; she was an AT&T employee when she heard the statements; and she asserts a hostile-work-environment theory. (Opp. at 12-18.) None establishes jurisdiction over Mr. Stankey.

First, Ms. Lopez's declaration does not cure the jurisdictional problem. *Minguez* did not turn on the absence of a declaration. Judge Kirsch dismissed the same aiding-and-abetting claim against Mr. Stankey because the alleged corporate contacts were not purposefully directed at New Jersey and lacked the required connection to the claim. (Compl.; Ex. A at 7-14.) Ms. Lopez's declaration does not change that analysis.

Second, Ms. Lopez's location when she watched the July 2023 town hall does not convert a nationwide broadcast into forum-directed conduct. Judge Kirsch held that a nationwide broadcast viewable in New Jersey lacks the New Jersey ties needed for personal jurisdiction. (*Id.* at 8-9.) Ms. Lopez's location reflects her own contact with New Jersey, not Mr. Stankey's. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Third, Ms. Lopez's employment status does not supply the required nexus. The jurisdictional question asks whether Mr. Stankey created suit-related contacts with New Jersey. Ms. Lopez alleges no fact showing that Mr. Stankey directed any communication to her, her managers, or her department about her relocation, surplus designation, termination, or alleged hostile work environment.

Fourth, the hostile-work-environment label does not alter the jurisdictional analysis. Ms. Lopez still asserts an NJLAD aiding-and-abetting claim against Mr. Stankey. She must connect

2

that claim to Mr. Stankey's own New Jersey-directed conduct. The same generalized statements, companywide town hall, social-media posts, and corporate visits do not become individual suit-related contacts merely because Ms. Lopez recasts them as hostile-work-environment evidence.

Ms. Lopez gives no reason for this Court to depart from Judge Kirsch's analysis in *Minguez.*

### 2.      Ms. Lopez cannot use corporate-capacity contacts to establish individual jurisdiction.

Judge Kirsch recognized the central point: Mr. Stankey's corporate-capacity contacts with New Jersey likely cannot give this Court personal jurisdiction over him individually. (Compl.; Ex. A at 8.) The cases Ms. Lopez relies on do not support a different result.

In *Wright v. Xerox Corp.*, the individual defendants allegedly communicated directly with the New Jersey plaintiff about the challenged retaliation and traveled to New Jersey to discuss the complaint underlying the claim. 882 F. Supp. 399, 405-10 (D.N.J. 1995). In *Importers Service Corp. v. Aliotta*, the defendant allegedly sent false communications directly to a New Jersey company to induce the transactions at the heart of the tort. No. 22-cv-4640, 2024 WL 2765620, at **10-17 (D.N.J. May 30, 2024). In both cases, the alleged forum contacts were the alleged wrongdoing. Ms. Lopez alleges nothing comparable. She does not allege that Mr. Stankey selected her for relocation or surplus, terminated her employment, supervised her, communicated with her about any employment action, or communicated with her chain of command about her employment. (*See generally*, Compl.) She does not allege that Mr. Stankey directed a single comment at her. (*Id.*) Mr. Stankey's sworn statement that he does not recall ever speaking with Ms. Lopez is unrebutted. (Compl.; Ex. B ¶ 13.)

Ms. Lopez instead relies on nationwide communications and corporate visits. Those contacts remain corporate contacts, not individual New Jersey contacts, even if Ms. Lopez labels

them unlawful or hostile. The Complaint's conclusory allegation that Mr. Stankey was "involved in and benefited from" the General Release cannot overcome his unrebutted declaration that he did not prepare or present it. (Compl.; Ex. B ¶ 15.) Because Ms. Lopez relies only on corporate visits and companywide statements not directed at her, she cannot show that Mr. Stankey purposefully availed himself to New Jersey.

Ms. Lopez fails the traditional specific-jurisdiction test. The opposition fails to identify facts from the Complaint that establish purposeful availment.

| Ms. Lopez's assertions regarding purposeful availment (Opp. 21-23) | Why the assertion does not establish minimum contacts. |
|---|---|
| "CEO Stankey demonstrated his preference for younger employees by championing the TDP program located in Middletown, which both he and AT&T have described as a program to develop young talent." (Opp. at 21.) | The Complaint alleges that AT&T maintained development programs for young employees and that Mr. Stankey visited TDP participants in New Jersey in his corporate capacity. (Compl. ¶¶ 36(g)-(j), 97.) Those allegations do not show that Mr. Stankey personally purposefully directed conduct at New Jersey or engaged in any conduct beyond his corporate capacity. (Memo at 10-12.) |
| "CEO Stankey met with employees several times in New Jersey during 2023 and 2024." (Opp. at 21.) | The Complaint identifies two visits to AT&T workplaces: the September 2023 Middletown event and the June 2024 TDP visit. (Compl. ¶¶ 28(e)(i)-(ii), 59-60, 97.) Both were corporate-capacity visits, which do not establish minimum contacts with New Jersey in Mr. Stankey's individual capacity. *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 850-51 (3d Cir. 2003); *Les Giblin LLC v. La Marque*, Case No. 2:20-cv-13827, 2021 WL 1997376, at *4 (D. N.J. May 19, 2021). (Memo at 12-15.) |
| "CEO Stankey authorized and directed the implementation of the HWWW initiative, which he intended and expected to reduce the number of older employees across every state in the United States including New Jersey." (Opp. at 21-22.) | The Complaint alleges that HWWW consolidated national operations and assigned employees to core locations. (Compl. ¶¶ 51, 74-75.) A nationwide corporate initiative does not show that Mr. Stankey personally purposefully directed conduct at New Jersey. (Memo at 10-12.) |

| | |
|---|---|
| "CEO Stankey was the architect of the HWWW initiative, pursuant to which the Bedminster, New Jersey office was reduced by about seventy-five percent (75%)." (Opp. at 22.) | The Complaint does not allege that the Bedminster office was reduced by 75 percent. It also does not allege a New Jersey contact by Mr. Stankey based on that assertion. (Compl. ¶¶ 74-106.) |
| "CEO Stankey intended and expected that the HWWW initiative would reduce the number of older employees. Plaintiff intends to adduce evidence that CEO Stankey instructed his Direct Reports to look at the data and come up with a plan that did so in New Jersey." (Opp. at 22.) | The asserted instruction to Mr. Stankey's direct reports is not pleaded. The Complaint alleges only general statements about HWWW and a nationwide consolidation. (Compl. ¶¶ 51-56, 74-75.) This speculative assertion cannot establish minimum contacts. *Singh v. Illusory Sys., Inc.*, 727 F. Supp. 3d 500, 509 (D. Del. 2024) ("unpled assertions . . . may not be used to save [p]laintiffs' claim"). (Memo at 10-12.) |
| "When CEO Stankey directed managers that the company needed younger employees to carry it into the future and told them that the HWWW initiative was the opportunity to 'say goodbye' to the older employees, it is reasonable to infer that he was aware and intended that his message would be heard by managers who worked in New Jersey and/or managers whose subordinates worked in New Jersey." (Opp. at 22.) | The Complaint alleges that all AT&T employees were notified of and encouraged to attend the July 2023 webcast, which Ms. Lopez joined from Bedminster. (Compl. ¶¶ 52-55.) It does not allege a New Jersey-specific meeting or instruction, and Mr. Stankey's statements were made in his corporate capacity. The fact Ms. Lopez happened to be in New Jersey when she heard the statements cannot establish personal jurisdiction. (Compl.; Ex. B at 8-9; Memo at 10-12.) |
| "Employees who worked in New Jersey were forced to relocate out of New Jersey, pursuant to the company initiative that CEO Stankey authorized and directed." (Opp. at 22.) | The Complaint attributes the relocation to AT&T's April 2024 letter. (Compl. ¶¶ 74-79, 95.) That corporate action does not show that Mr. Stankey personally purposefully directed conduct at New Jersey. (Memo at 12.) Mr. Stankey's statement that he had no role in the decisions to relocate her position and terminate her employment are not contested. (Compl.; Ex. B ¶¶ 10-13.) |
| "CEO Stankey met in person with employees in New Jersey and expressed to them his preference for younger employees and a hostility to older employees." (Opp. at 22.) | The Complaint alleges the September 2023 Middletown remarks and the June 2024 TDP visit. (Compl. ¶¶ 28(e)(i)-(ii), 59-60, 97.) These alleged corporate-capacity events do not show that Mr. Stankey personally purposefully directed conduct at New Jersey. (Memo at 10-12.) |
| "On September 18, 2023, CEO Stankey | The Complaint alleges the statement at a |

5

| | |
|---|---|
| told them he was an 'old guy' who was not going to work for much longer, while praising the wonderful looking young employees." (Opp. at 22.) | Middletown corporate event. (Compl. ¶¶ 28(e)(i), 59.) A statement made during that corporate-capacity visit does not establish that Mr. Stankey personally purposefully availed himself of New Jersey. (Memo at 10-12.) |
| "On or about November 13, 2023, CEO Stankey met with employees in Bedminster and told them that the company was underrepresented in the number of employees in their twenties and thirties." (Opp. at 22.) | The Complaint does not plead this alleged statement. (Compl. ¶¶ 51-60, 97.) An unpled assertion cannot establish minimum contacts. *Singh*, 727 F. Supp. 3d at 509, and this is again an alleged statement from Mr. Stankey made in his corporate capacity and not directed specifically at Ms. Lopez or any other New Jersey employee. (Memo at 10-12.) |
| "In or about June, 2024, CEO Stankey met with members of the TDP in New Jersey, and posted a link to an AT&T Facebook page on which was posted a photograph of him meeting with young people and a statement 'The day was a great opportunity to build connections and celebrate the work being done by the young professionals who will lead future innovations at AT&T.'" (Opp. at 22.) | The Complaint alleges that Mr. Stankey met with TDP members and AT&T posted the quoted Facebook message. (Compl. ¶ 97.) These corporate-capacity activities do not establish that Mr. Stankey personally purposefully directed conduct at New Jersey. (*See* Memo at 12-15.) |
| "CEO Stankey communicated his preference for younger employees and hostility against older workers to employees in New Jersey other than in person." (Opp. at 22.) | The Complaint identifies a nationwide July 2023 webcast and general messages or posts about young employees. (Compl. ¶¶ 52-58, 60.) Nationwide and general corporate communications do not show that Mr. Stankey purposefully directed conduct at New Jersey. (*See* Memo at 10-12.) |
| "CEO Stankey told employees from New Jersey who were invited to participate in an interactive web meeting that the company needed younger employees, and the HWWW was an opportunity to 'say goodbye' to the older employees." (Opp. at 22.) | The Complaint alleges that all AT&T employees were notified and encouraged to attend the webcast; it does not allege a New Jersey-specific meeting. (Compl. ¶¶ 52-55.) A nationwide broadcast does not become forum-directed because New Jersey employees participated. (Compl. ¶¶ 8-9; Memo at 10-12.) |
| "CEO Stankey on or about June 23, 2023, posted to his followers on various social media, which undoubtedly included many managers who worked in New Jersey and/or had subordinate employees who | The Complaint alleges a general social-media post. (Compl. ¶ 57.) It does not allege that the post targeted New Jersey. A general post does not establish minimum contacts with New Jersey. (Memo at 10- |

6

| | |
|---|---|
| worked in New Jersey, that 'Young professionals today are more likely to move around to a variety of jobs, working on a variety of projects in a variety of places…" (Opp. at 22.) | 12.) |
| "On or about July 28, 2023, CEO Stankey sent a message to managers that praised the former Head of Human Resources for her 'passion for mentoring young people.'" (Opp. at 23.) | The Complaint alleges a general message regarding Angela Santone. (Compl. ¶ 58.) It does not allege that the message was directed to New Jersey. (*Id*.) A general message does not establish minimum contacts with New Jersey. (Memo at 10-12.) |
| "CEO Stankey posted on his LinkedIn page about his September, 2023, visit to Middletown, and wrote that he 'enjoyed spending time with members of our Talent & Development program - the young minds helping shape the future of our network…'" (Opp. at 23.) | The Complaint alleges that LinkedIn post. (Compl. ¶ 60.) A general LinkedIn post does not show that Mr. Stankey purposefully directed conduct at New Jersey. (Memo 10-12.) |
| "CEO Stankey expressed to employees in New Jersey hostility against older employees." (Opp. at 23.) | The Complaint alleges general statements and the July 2023 webcast, not "hostile," age-based statements to Ms. Lopez or anyone else. (Compl. ¶¶ 49-60.) Those general allegations do not identify conduct by Mr. Stankey purposefully directed at New Jersey. (Memo at 10-12.) |
| "CEO Stankey's age-biased statements and conduct was offensive to and upset employees in New Jersey." (Opp. at 23.) | The Complaint alleges that Ms. Lopez found the July 2023 remarks offensive and upsetting. (Compl. ¶ 55.) Her alleged harm in New Jersey cannot substitute for a showing that Mr. Stankey purposefully directed tortious conduct at New Jersey. *Marten*, 499 F.3d at 297-98. (Memo at 17-18.) |

Ms. Lopez's relatedness argument fails for the same reason. She alleges that AT&T moved her role to Atlanta, required a relocation response, selected her for surplus, and terminated her employment. (Compl. ¶¶ 74-79, 95, 100-101.) She does not allege that Mr. Stankey made or directed those decisions, knew about them, or knew she existed. (*See id*.) Those alleged contacts lack the strong relationship *Hepp* requires. *See Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021)

7

(explaining the plaintiff must establish the defendant's contacts with the forum state "g[a]ve rise to—or relate to—plaintiff's claims.")

Ms. Lopez cannot create relatedness by relabeling the same allegations as a hostile work environment. Her aiding-and-abetting claim still requires a strong relationship between Mr. Stankey's own New Jersey contacts and her claim. The Complaint relies on the same general corporate statements, town hall, social-media posts, and corporate visits. (Compl. ¶¶ 47-60, 97.) It does not allege that Mr. Stankey directed any statement to Ms. Lopez, participated in the challenged employment decisions, or knew her employment situation. (*Id.* ¶¶ 74-106.) A new label does not supply the missing jurisdictional link.

### 3.    Ms. Lopez fails the *Calder* effects test.

Ms. Lopez also fails the *Calder* effects test. She must show that Mr. Stankey committed an intentional tort, that she felt the brunt of the harm in New Jersey, and that Mr. Stankey expressly aimed tortious conduct at New Jersey so that New Jersey was the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). The opposition identifies no facts satisfying those elements.

The cases Ms. Lopez relies on do not bridge that gap. *Shanahan v. Ethan Allen Retail, Inc.* involved direct letters and emails to the plaintiff in the forum about her medical leave and termination. No. 21-595, 2021 WL 4077950, at *5 (E.D. Pa. Apr. 2, 2021). *Wright* involved individual managers in the plaintiff's chain of command whose forum-directed conduct was central to the NJLAD claim. 882 F. Supp. at 405-10. Ms. Lopez alleges no similar direct contact or claim-centered conduct by Mr. Stankey. Nor does Ms. Lopez plead that New Jersey was the focal point of tortious activity by Mr. Stankey. The July 2023 town hall was available to employees nationwide. (Compl. ¶ 52.) The social-media posts and other communications were general corporate communications. (*Id.* ¶¶ 56(c), 57-58, 60.) The September 2023 and June 2024 visits

were not directed at Ms. Lopez's relocation, surplus selection, or termination, and Mr. Stankey had no direct interactions with Ms. Lopez during those visits. (*Id*. ¶¶ 28(e)(i)-(ii), 59-60.) Alleged harm in New Jersey, standing alone, is not enough. *Marten v. Godwin*, 499 F.3d 290, 297-98 (3d Cir. 2007).

### 4. Exercising jurisdiction would violate due process.

Even if Ms. Lopez could satisfy part of either test, exercising jurisdiction over Mr. Stankey in New Jersey would violate due process. Ms. Lopez does not allege personal conduct by Mr. Stankey that created a substantial connection with New Jersey. *See Walden*, 571 U.S. at 284. She relies instead on *Wright's* discussion of New Jersey's interest in the NJLAD's enforcement. (Opp. 27.) Wright does not support jurisdiction here.

In *Wright*, the individual defendants allegedly communicated directly with the plaintiff in New Jersey about the retaliation and traveled to New Jersey to discuss the underlying complaint. 882 F. Supp. at 405-10. Those direct, claim-centered contacts made jurisdiction fair. Ms. Lopez alleges no comparable conduct by Mr. Stankey. She does not allege that he supervised her, communicated with her about an employment decision, directed her relocation or termination, or traveled to New Jersey to address her employment. (Compl. ¶¶ 63-72, 74-106.) New Jersey's interest in enforcing the NJLAD does not eliminate the constitutional requirement that Mr. Stankey himself have a substantial forum connection. Ms. Lopez's theory would expose any corporate officer to individual litigation in every state where the company has employees whenever the officer gives nationwide remarks or visits a corporate office. Due process does not allow that result.

### 5. Ms. Lopez is not entitled to jurisdictional discovery.

Ms. Lopez has not alleged facts supporting a prima facie case for jurisdictional discovery. *See Parker v. Learn the Skills Corp.*, 219 F. App'x 187, 190 (3d Cir. 2007). To obtain discovery,

9

she must present factual allegations suggesting with reasonable particularity that the required contacts may exist. *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011).

She has not done so. Apart from legally insufficient corporate-capacity visits, Ms. Lopez relies on speculative and conclusory allegations. The Third Circuit and district courts within it reject jurisdictional discovery based on bare or vague allegations. *See Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022); *Antico v. RAM Payment, LLC*, No. 1:20-cv-12130, 2024 WL 4315255, at \*6 (D.N.J. Sept. 26, 2024).

The case Ms. Lopez cites, *Massachusetts School of Law at Andover, Inc. v. ABA*, supports denial. The Third Circuit held that unsupported jurisdictional allegations did not justify discovery and explained that jurisdictional discovery generally concerns corporate defendants, not individuals. 107 F.3d 1026, 1042 (3d Cir. 1997). Ms. Lopez's assertion that she may depose Mr. Stankey later as a nonparty does not change the jurisdictional analysis. She cannot obtain jurisdictional discovery into an individual defendant because her existing allegations are insufficient. The Court should deny her request.

### B.       Ms. Lopez fails to state an NJLAD aiding-and-abetting claim against Mr. Stankey.

The Court need not reach Rule 12(b)(6) because the claims against Mr. Stankey should be dismissed for lack of personal jurisdiction. If the Court reaches the issue, it should dismiss the NJLAD aiding-and-abetting claim for an independent reason: Ms. Lopez does not plead knowing and substantial assistance by Mr. Stankey.

To state an NJLAD aiding-and-abetting claim, Ms. Lopez must allege that "(1) the party whom the defendant aid[ed] [] perform[ed] a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he

10

provide[d] the assistance; [and] (3) the defendant [] knowingly and substantially assist[ed] the principal violation." *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004). Ms. Lopez does not plead facts satisfying the second or third elements.

The opposition repackages a conclusory theory: Mr. Stankey approved and promoted HWWW, intended it to reduce older employees, and therefore substantially assisted Ms. Lopez's forced relocation and termination. (Opp. 29-30.) But the Complaint does not allege that Mr. Stankey knew of Ms. Lopez's relocation or surplus selection, directed anyone to make those decisions, communicated with her managers about those decisions, or otherwise participated in them. (*See generally*, Compl.) Speculation about a companywide policy does not plead knowing and substantial assistance in a specific NJLAD violation against Ms. Lopez.

The same defect defeats Ms. Lopez's hostile-work-environment theory. The opposition identifies statements and appearances by Mr. Stankey, but it does not plead facts showing that he was generally aware of a role in an unlawful activity or knowingly and substantially assisted a principal NJLAD violation against Ms. Lopez. *See Tarr*, 853 A.2d at 929. Conclusory allegations that Mr. Stankey "actively and purposefully aided and abetted" discrimination, *see* Compl. ¶ 130, and "aided and abetted AT&T," *id.* ¶ 142, do not state a plausible claim. Individual liability under the NJLAD requires pleaded facts demonstrating that the individual defendant knowingly and substantially assisted in the underlying violation. Ms. Lopez has not alleged facts sufficient to establish that Mr. Stankey provided such knowing and substantial assistance. Accordingly, the Court should dismiss the NJLAD claim against him.

11

### III.   CONCLUSION

Mr. Stankey respectfully requests the Court dismiss the Complaint against him in its entirety for lack of personal jurisdiction, or in the alternative, because the Complaint fails to state a claim against him.

Dated:  August 10, 2026

Respectfully submitted,

*/s/ Rachel Fendell Satinsky*

Rachel Fendell Satinsky, Bar No. 017002010
rsatinsky@littler.com
Tanner McCarron, Bar No. 326242020
tmccarron@littler.com
LITTLER MENDELSON, P.C.
Three Parkway, 1601 Cherry Street
Suite 1400
Philadelphia, Pennsylvania 19102.1321
Telephone:    267.402.3000
Facsimile:    267.402.3131

Attorneys for Defendants
AT&T INC., AT&T MOBILITY SERVICES
LLC and JOHN STANKEY

12

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel Fendell Satinsky, hereby certify that on August 10, 2026, the foregoing document was filed using the court's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

/s/ *Rachel Fendell Satinsky*
Rachel Fendell Satinsky